(48 South. 320.)

No. 17,097.

RICKMAN v. LEE LUMBER CO., Limited.

(Nov. 30, 1908. Rehearing Denied Feb. 15, 1909.)

MASTER AND SERVANT (§§ 238, 244*)—INJURY TO SERVANT—CONTRIBUTORY NEGLIGENCE.

Where an employé of a mill is engaged in oiling the machinery when the whistle to start is blown, and is afforded ample opportunity to get into a safe position pending the giving and answering of the signal to start, and the starting of, the machinery, he cannot recover damages for injuries sustained whilst failing to avail himself of such opportunity. On the other hand, if, having experience in such matters, he attempts to oil the machinery after it has been put in motion and under conditions unnecessarily dangerous, he cannot recover for injuries received whilst so engaged.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 743, 777; Dec. Dig. §§ 238, 244.*]

(Syllabus by the Court.)

Appeal from Thirteenth Judicial District Court, Parish of Rapides; Wilbur Fisk Blackman, Judge.

Action by Peter L. Rickman against the Lee Lumber Company, Limited. Judgment for plaintiff. Defendant appeals. Reversed, and suit dismissed.

Barksdale & Barksdale and Blackman & Overton, for appellant. William Cullen Roberts and John Bunyan Roberts, for appellee.

### Statement of the Case.

MONROE, J. Plaintiff obtained a judgment for damages for an injury received whilst working in defendant's service, and defendant has appealed.

The story told by plaintiff is about as follows, to wit:

That he was employed as "extra edgerman"; that on October 1, 1907, he was directed to report for an evening run, and, whilst the machinery was at rest, was oiling the edger, using his right hand for the purpose, with his left hand hanging by his side, just over the feed roller, the sleeve of his jumper being unbuttoned and hanging loose; that the usual hour for starting the mill, in the evenings, was 7 o'clock, and that the whistle to start was usually blown 5 minutes before 7, but that on this occasion the whistle was blown some 14 or 15 minutes before 7; that it "seemed" to him that the machinery started "right immediately" afterwards, and that he was startled and did not have time to get out of the position in which he had placed himself; that the sleeve of his jumper got caught in the feed roller; and that, in pulling it loose, he brought his hand in contact with the saw, and was thereby injured, losing a finger. He says that Dean, the millwright, who blew the whistle to start, was about 10 or 15 feet distant from him at the time, and could see him plainly; that he heard the three whistles to start slowly, and did not hear the customary three whistles, in response, from the engineer, who was on the floor below; but that the machinery started quite slowly. He says that he has worked about lumber mills for seven or eight years; that he has heard the whistle blown three times a day, or oftener; and that there was nothing unusual about the blowing on this occasion, except that it came sooner than he expected. He also says that, when the whistle blew the second time, he was still oiling the edger.

McDonald, the edgerman (called for plaintiff), says that he understood that plaintiff was his assistant, and that he had requested him to oil the edger; that it is the duty of the foreman to see that every one who happens to be on the same floor and can be seen is out of danger before starting the machinery; that ordinarily, where three whistles are blown to start, and three by the engineer in reply, a person would have ample time, before the starting of the machinery, to get out of any place of danger.

Two witnesses for defendant, Dean and King, testify that plaintiff was not oiling the edger and was not in a place of danger when

the whistle to start was blown, but that he went to the place where he was hurt after the machinery was in motion, corroborating each other. Dean also testifies that he told plaintiff, before he blew the whistle, to get out of the way, that he was "going to start up the little engine to run some chains on," and that plaintiff heard him, though he made no reply. Tucker, the foreman, says that he was in the engine room (on the floor below where the accident happened) when the whistle to start was blown, talking to the engineer, and that the engineer got up, walked 15 or 20 feet to the engine, answered the signal to start by three whistles, and started the engine, and that from the time the whistle was blown upstairs until the answer was given there was an interval of about half a minute. He also says that it was some six or seven minutes later (and in this he is corroborated) before the whistle to stop was blown; and it is shown that the whistle to stop was blown some ten seconds only after plaintiff's sleeve was caught, so soon after, in fact, that his oil can, which he presumably dropped at the moment, and which appears to have fallen on a slowly moving belt, had been carried only about eight feet.

The foreman also testifies that plaintiff was employed as an offbearer, and not as an assistant, or extra edgerman, and that he, the foreman, had given him no instructions to operate or oil the edger. It otherwise appears, however, that plaintiff was in the habit of doing such work, and it seems probable that the foreman knew and countenanced it. Deville (who was employed to "punch clocks") says that, in passing through the mill a few minutes before 7 o'clock, he saw plaintiff, and noticed that he had on a blue jumper and that one sleeve was unbuttoned—a fact which plaintiff admits.

J. E. Butler was examined, under commission, as a witness for plaintiff, and we have duly considered his testimony (which has been added to the transcript, since its filing, on motion of plaintiff), though it does not appear to have been offered in evidence, and does not commend itself when considered. He says that the whistle was blown but twice to start the machinery, whereas plaintiff and other witnesses testify that it was blown three times. He says, also, that he was "helping Charley Dean fix the transfer chains, from the long side to the short side," and that, when he first saw plaintiff, the latter had pulled himself loose from the edger saw. He also says that he heard no answering signal from the engineer, and "that plaintiff did not have time to get away from the machine, after the signal to start was sounded, before the edger did start."

## Opinion.

If plaintiff was in a place of danger when the whistle to start, which he heard and the significance of which he understood, was blown, it appears that he had ample time, whilst the engineer was walking 15 or 20 feet and blowing three whistles in reply, to get into a place of safety. But he himself says, and repeats, that he "was oiling when he [Dean] blew the second whistle." It is clear, therefore, that he was not so much startled by the blowing of the whistle, and that he did not consider himself pressed for time.

According to Butler's testimony, Dean, after blowing the whistle to start, had had time to get to his place of work and to engage with the witness in fixing the transfer chains before the accident happened (and Dean says the same thing), and we can see no reason why the plaintiff should not, during that time, have stepped out of his position in the edger, if, in fact, he was in that position.

On the other hand, accepting the testimony of Dean and King, to the effect that plaintiff was not engaged in oiling the edger when the signal to start was given, and the testi-

mony, with the corroborating circumstances, to the effect that the accident did not happen until the machinery had been in motion six or seven minutes, and we must conclude that plaintiff, having been requested by McDonald to oil the edger, undertook that duty after the machine had been put in motion. From either point of view, the facts are against him, and defendant cannot be made liable in damages for the injury sustained by him.

It is therefore ordered, adjudged and decreed that the judgment appealed from be annulled, avoided, and reversed, and that there now be judgment for defendant, rejecting the demand of the plaintiff and dismissing this suit, at his cost.